UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANA GUERRA,

Plaintiff,

–against–

TRECE CORP., d/b/a TRECE MEXICAN
CUISINE AND TEQUILA BAR, and JOEL LIM,

Defendants.

**OPINION AND ORDER**

18 Civ. 625 (ER)

RAMOS, D.J.:

Ana Guerra is a former waitress and bartender who worked at Trece Mexican Cuisine and Tequila Bar ("Trece").  She brings claims under the Fair Labor Standards Act ("FLSA")[1] and various New York State wage and labor laws (collectively "NYLL")[2] for alleged violations of her labor rights arising from her employment at Trece.  She also alleges that she was unlawfully discharged from Trece in violation of New York State and City human rights law.[3]

Before the Court is Guerra's motion for summary judgment and Defendants Trece and Joel Lim's (collectively "Defendants") cross-motion for summary judgment.  For the reasons discussed in this Opinion, the Court grants in part and denies in part the parties' cross-motions for summary judgment.

---

[1] 29 U.S.C. §§ 201 *et seq.*

[2] *See* Minimum Wage Order for the Hospitality Industry, N.Y. Comp. Codes R. & Regs., ("NYCRR") Title 12 § 146 and the previous Title 12 § 137 *et seq.*, the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, and the New York Labor Law §§ 190 *et seq.*

[3] *See* New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

## I.     BACKGROUND

### a.   Factual Background

At all relevant times during this case, Lim was a manager at Trece, a Mexican restaurant formerly located on East 13th Street in Manhattan.  Doc. 59-3, Supplemental Declaration of David A. Robins ("Supp. Robins Decl.") Ex. C ("Lim Depo."), at 16:14; Doc. 1, Complaint ("Compl.") at ¶ 16.  Lim has also signed documents referring to himself as "President" and "Principal" of Trece.  Docs. 59-10–11, Supp. Robins Decl. at Exs. J–K.  In his capacity as manager, Lim had hiring and firing power over employees, purchased food supplies, paid bills and signed checks, among other responsibilities.  Doc. 59-2, Supp. Robins Decl. Ex. A ("Interrog. Reply"), at Nos. 5–7; Lim Depo. at 24:5–11; 25:23–26:2; 27:23–24.  Lim also hired other managers.  *Id.* at 25:6–11.

Guerra began working at Trece as a server and bartender in March 2013.  Doc. 53, Defendants' Rule 56.1 Statement ("Defs' 56.1") at ¶ 3.  At all relevant times, Guerra was paid by the shift, not on an hourly basis.  *Id.* at ¶ 21.  From the beginning of her employment in March 2013 through the week ending February 9, 2014, Defendants' payroll records indicate that Guerra was paid $40 per shift.  Doc. 52-6, Declaration of Lawrence F. Morrison ("Morrison Decl.") Ex. F ("Time Summary"), at 7, 10–13.  While her pay fluctuated somewhat throughout February 2014, she was paid $25 per shift beginning the week of February 24, 2014 through the end of her employment at Trece.  *Id.* at 1–7.  Defendants never provided Guerra with wage notices or wage statements showing her rate of pay, allowances for meals, hours worked, and other information required by NYLL.  Defs' 56.1 at ¶¶ 8, 30; *see also* NYLL §§ 195(1-a), (3).  Rather, she was paid in cash.  Defs' 56.1 at ¶ 8.  She was paid on a per-shift basis no matter how many hours she worked in a week.  *Id.* at ¶ 23.

Guerra alleges that her shifts were typically about 10 hours long, from about 4 p.m. to 2:15 a.m.  Doc. 49, Declaration of Ana Guerra ("Guerra Decl."), at ¶¶ 15-17.  Trece disputes the accuracy of these hours, alleging that her shifts were typically seven to eight hours, ending between 11 p.m. and 12 a.m.  Defs' 56.1 at ¶¶ 4–5.  Guerra also never received "spread of hours" pay, or an additional one hour's pay at minimum wage as required by NYLL, for days that her work shift exceeded 10 hours.  *Id.* at ¶ 34.  In Lim's deposition, he stated that he did not know what spread of hours pay was.  Lim Depo at 33:22–34:2.  Throughout her employment, Guerra also never received overtime premium pay.  Defs' Rule 56.1 at ¶ 26.[4]

Guerra's employment with Trece continued until December 2016.  Defs' 56.1 at ¶ 3.  In December 2016, Guerra informed Jose Ortega, another manager at Trece, that she was pregnant.  Guerra Decl. at ¶ 24.  She did not request time off or any other accommodation because of her pregnancy.  *Id.* at ¶ 25.  Guerra further alleges that she told Lim she was pregnant while at work one day and asked him if it was a problem.  Doc. 58, Supplemental Declaration of Ana Guerra ("Supp. Guerra Decl."), at ¶¶ 2–3.  Lim allegedly responded that it wasn't a problem "right now."  *Id.* at ¶ 4.  Guerra also alleges that after informing Lim and Ortega about her pregnancy, Ortega told her via text message not to come into work, effectively terminating her.  Guerra Decl. at ¶ 27.  Guerra was never disciplined or told that she was not doing a good job.  Defs' 56.1 at ¶ 60.  Lim acknowledges that he knew Ortega had instructed Guerra to "take a rest" because of "her condition at the time."  Lim Depo. at 50:19–25.  However, Lim claims that he did not know Guerra was pregnant, only that her "condition was not good."  *Id.* at 52:6–7.  He

---

[4] Due to the dispute over the length of Guerra's shifts, Defendants dispute whether overtime or spread of hours pay was necessary for most of the weeks Guerra worked at Trece.  The dispute over the length of her typical shift is discussed in more detail in Section III.d., *infra*.

states that he learned Guerra was pregnant when he was served with the complaint in this case. *Id.* at 47:5–11.

### b. Procedural History

Guerra filed this action on January 24, 2018. On February 19, 2019, Trece filed for bankruptcy in the Eastern District of New York. Doc. 57, Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Pls. Res. 56.1"), at ¶ 1. Guerra was notified of the bankruptcy filing via a letter filed in this Court on April 10, 2019. *Id.* at ¶ 2. Following Trece's notice to the Court that it had filed for bankruptcy, Guerra's claims against Trece were stayed on April 23, 2019, but claims against Lim were not. Doc. 20. The Court was notified on October 31, 2019 that bankruptcy proceedings were complete, and it lifted the stay. Doc. 25. The Bankruptcy Court approved Trece's Bankruptcy Plan on November 4, 2019. Pls. Res. 56.1 at ¶ 4. The confirmed Plan provided that "[o]n the confirmation date of this Plan, [Trece] will be discharged from any debt that arose before the confirmation of this Plan . . . ." *Id.* at ¶ 7.

Following discovery, Guerra moved for summary judgment on July 23, 2020. Defendants filed an opposition and cross-motion for summary judgment on August 25, 2020.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR JointVenture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its

burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a

genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med.*

*Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing

*Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.

2011) (quoting *Williams v. R.H Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However,

in opposing a motion for summary judgment, the non-moving party may not rely on unsupported

assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14,

18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set

forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."

*Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57

(1986)).

"When confronted with cross-motions for summary judgment, the Court analyzes each

motion separately, 'in each case construing the evidence in the light most favorable to the non-

moving party.'"  *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1

(S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir.

2011)); *see also Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ach

party's motion must be examined on its own merits, and in each case all reasonable inferences

must be drawn against the party whose motion is under consideration.") (citation omitted).  The

Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment.  *Morales*, 249 F.3d at 121.

## III.   DISCUSSION

### a.   The Court Will Consider Defendants' Cross-Motion for Summary Judgment

Plaintiff first seeks to exclude Defendants' cross-motion for summary judgment on the basis that it was untimely.  Doc. 60, Plaintiff's Memorandum of Law in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment ("Pls. Reply/Opp"), at 2.  On March 13, 2020 the Court endorsed the parties' proposed briefing schedule, which set deadlines for Plaintiff, but not Defendants, to move for summary judgment.  Doc.  35.  The briefing deadlines were later extended without any mention of a cross-motion being filed.  Doc. 41.

On July 23, 2020, Plaintiff moved for summary judgment on all claims in this case:

- Defendants' liability for failure to provide wage notices and wage statements under NYLL;

- Defendants' liability for failure to pay Guerra an hourly wage as required by NYLL;

- Defendants' liability for failure to pay minimum wage, overtime, or tips under the FLSA and NYLL;

- Defendants' ineligibility to claim a tip credit;

- Defendants' liability for misappropriation of gratuities;

- Defendants' liability for failure to pay Plaintiff required spread of hour payments under NYLL;

- Defendants' liability for pregnancy discrimination under NYSHRL and NYCHRL; and

- Lim's liability as an employer under the FLSA, NYLL, NYSHRL and NYCHRL.

*See* Doc. 42, Notice of Motion for Summary Judgment ("MSJ Notice").

Defendants did not file a motion for summary judgment at that time.  However, as part of their opposition submitted August 25, 2020, Defendants cross-moved for summary judgment, seeking judgment on three issues:

- Dismissal of all claims against Trece due to its discharge in bankruptcy;

- Dismissal of Guerra's NYSHRL and NYCHRL claims for lack of subject matter jurisdiction; and

- Dismissal of Guerra's NYSHRL and NYCHRL claims against Lim on the basis that he is not an employer under these statutes.

*See* Doc. 51, Defendants' Notice of Cross-Motion for Summary Judgment ("Defs' MSJ Notice").

In response, Guerra asks the Court to dismiss Defendants' cross-motion on the basis that it was not timely filed.  Pls. Reply/Opp at 2.  Guerra cites (and Defendants do not contest) the fact that the briefing schedule in this case only set a filing deadline for Plaintiff's motion, and did not set deadlines for any cross-motions.  *See* Doc. 41; *see also* Doc. 63, Defendants' Memorandum of Law in Further Support of Defendants' Cross-Motion for Summary Judgment, ("Defs' Reply") at 1–2.

Under Fed. R. Civ. P. 16(f) and 37, a court may move to strike pleadings for failure to follow a scheduling or other pretrial order.  *Hidalgo v. New Ichiro Sushi, Inc.*, 15 Civ. 414 (AJN), 2017 WL 4712789, at *3 (S.D.N.Y. Sept. 27, 2017); *see also* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."); Fed. R. Civ. P. 37(b)(2)(A)(iii) (authorizing a court, as a sanction for failing to obey a discovery order, to "strik[e] pleadings in whole or in part").  Defendants argue in response that

the Court should nevertheless consider their cross-motion because certain issues of liability are

clear, and because "resolution of the cross-motion will narrow the issues that the Court will have

to consider at . . . trial."  Defs' Reply at 1 (quoting *Hahnel v. United States*, 782 F. Supp. 2d 20,

31 (W.D.N.Y. 2011)).  They also argue that the Court has discretion to consider their cross-

motion under Fed. R. 56(f), which provides that the Court may grant summary judgment to the

nonmovant, independent of the arguments raised in the moving party's brief, after "notice and a

reasonable time to respond."

The decision to strike such pleadings and retroactively extend deadlines is an "equitable

determination[]" that "turn[s] on evaluation of all of the relevant circumstances."  *Hidalgo*, 2017

WL 4712789, at *3 (citing *Purisima v. Tiffany Entm't*, No. 09 Civ. 3502 (NGG) (LB), 2013 WL

4500699, at *3–5 (E.D.N.Y. Aug. 20, 2013)).  However, "[s]trong public policy favors resolving

disputes on the merits."  *Purisima*, 2013 WL 4500699, at *4 (citation and quotation marks

omitted).  To find that a movant demonstrated the "excusable neglect" necessary to merit the

retroactive extension of a filing deadline, courts consider "[1] [t]he danger of prejudice to the

[opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3]

the reason for the delay, including whether it was in the reasonable control of the movant, and

[4] whether the movant acted in good faith."  *Tancredi v. Metro. Life Ins. Co.*, 378 F. 3d 220,

228 (2d Cir. 2004) (internal citation and quotation marks omitted; alterations in original).

Together, these factors weigh in favor of considering the arguments raised in Trece's

cross-motion.  First, there is little danger of prejudice to Guerra.  The parties have fully briefed

both summary judgment motions, and Guerra addressed all of Defendants' arguments in her

Reply/Opp.  Plaintiff also consented to Defendants filing a reply brief to their cross-motion,

which the Court also approved.  *See* Doc. 62.  Moreover, Guerra has not requested additional

factual material to respond to the arguments raised by Defendants.

Second, no significant delay will result from the consideration of Defendants' arguments.

Defendants promptly filed their reply brief a week after Plaintiff's Reply/Opp., within the agreed

upon time period.  *Id.*  And because some of the arguments raised by Defendants are

jurisdictional and/or resolve claims at issue in this case, the Court finds that considering them

here will lead to a more efficient case resolution, as it will help the parties avoid further requests

for briefing or a longer trial.[5]

The third factor, however, weighs in Plaintiff's favor, as Defendants have not explained

their failure to include this cross-motion in the parties' briefing schedule.  However, Defendants

nevertheless have presented a good faith argument that consideration of these claims is proper,

making the fourth factor—and the inquiry as a whole—weigh in their favor.  As discussed in

more detail in Section III.b., *infra*, Defendants' claim regarding Trece's bankruptcy is made in

good faith because it clarifies Trece's liability, rendering further proceedings for Trece

unnecessary, and will help the parties avoid further disputes about a debt that both parties agree

would be unrecoverable.  *See* Pls. Reply/Opp. at 4 (conceding that Trece's bankruptcy discharge

"impacts recovery for the financial penalties incurred as a result of [Trece's actions]").

Moreover, Defendants' argument regarding Trece's bankruptcy is based on undisputed facts.

*See* Pls. Res. 56.1 at ¶¶ 1–7 (confirming that all material facts proffered by Defendants regarding

the bankruptcy claim are undisputed).  Similarly, Trece's claim regarding the Court's lack of

supplemental jurisdiction helps avoid further disputes over state law claims that this Court has no

---

[5] Indeed, Defendants indicated their intention to move for judgment on the pleadings under Rule 12(c) if the Court were to decline to consider their argument that it lacks subject matter jurisdiction over the NYSHRL and NYCHRL claims.  *See* Defs' Reply at 2.

jurisdiction over.  Thus, Defendants have presented good faith arguments that will help the Court resolve important issues in this case properly and efficiently.

### b.  Guerra's Claims Against Trece Are Barred by Trece's Bankruptcy Plan

Defendants move for summary judgment and dismissal of Guerra's claims against Trece, arguing that these claims are barred by the November 4, 2019 confirmation of Trece's Bankruptcy Plan.  *See* Doc. 52-5, Morrison Decl. Ex. E ("Bankruptcy Confirmation").  The discharge of a debt under § 1141(d)(1) of the Bankruptcy Code "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . ." and "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt."  11 U.S.C. § 524(a).

Here, the confirmation of Trece's Bankruptcy Plan provides that "pursuant to Section 1141(d)(1) of the Bankruptcy Code, subject to the terms of the Plan, [Trece is] discharged from any debt to the fullest extent provided in such section . . . ."  *Id.* at 6.  The underlying Bankruptcy Plan also provides that "[Trece is] discharged from any debt that arose before confirmation of this Plan . . . ."  Doc. 52-4, Morrison Decl. Ex. D ("Bankruptcy Plan") at 7.  Thus, any judgment or recovery entered against Trece for debts owed to Guerra would be precluded by the Bankruptcy Plan under § 1141(d)(1).

Guerra concedes that the bankruptcy discharge prevents her from recovering damages from Trece, but argues that the Court could still find that Trece violated the law and enter a judgment in her favor (albeit an unrecoverable one).  Pls. Reply/Opp. at 5.  Guerra cites *Solis v. SCA Rest. Corp.* in support.  *See* 938 F. Supp. 2d 380, 405 (E.D.N.Y. 2013).  In *Solis*, the Court permitted the United States Department of Labor to pursue FLSA claims against a restaurant and

its owner, even though the owner had a similar bankruptcy discharge.  938 F. Supp. 2d at 405

n.13.  However, the court's decision in *Solis* does not govern here because it was predicated on

the Department of Labor's power subject to the so-called police and regulatory exemption.  *See*

11 U.S.C. § 362(b)(4).

      The police and regulatory exemption is an exception to the ordinary rule that a party's

filing for bankruptcy automatically stays all other "action[s] or proceeding[s] against the debtor .

. . or [actions] to recover a claim against the debtor that arose before the commencement of

[bankruptcy proceedings]."  11 U.S.C. § 362(a)(1).  While this automatic stay provision

ordinarily would prevent a FLSA action against a debtor who has filed for bankruptcy, it does

not apply to "an action or proceeding by a governmental unit" to "enforce such governmental

unit's or organization's police or regulatory power."  11 U.S.C. § 362(b)(4).  This exemption is

intended to "prevent a debtor from frustrating necessary governmental functions by seeking

refuge in bankruptcy court."  *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal citation

and quotation marks omitted).  Therefore, a court may enter—but not seek to recover—a money

judgment against a debtor whose debts have been discharged by a bankruptcy plan, but only so

long as "the proceeding in which such a judgment is entered is one to enforce the governmental

unit's police or regulatory power."  *Id.* [6]

      Here, this condition is simply not met.  Guerra is a private individual seeking to recover

debts against Trece.  She is not a government entity seeking to enforce its police or regulatory

power.  Moreover, the relevant facts regarding the bankruptcy proceedings are undisputed:

Guerra does not contest that Trece indeed filed for bankruptcy.  Pls. Reply 56.1 at ¶ 1.  Nor does

---

[6] The exception also permits government entities to seek injunctive relief.  *See Martin v. Safety Elec. Const., Co., Inc.*, 151 B.R. 637, 638–9 (D. Conn. 1993) (citing cases).

she contest that she received actual notice of the bankruptcy filing or the discharge. *Id.* at ¶ 2, *cf.* *In re Massa*, 187 F.3d 292, 298 (2d Cir. 1999) (creditor's debt was not discharged when creditor had no actual notice or knowledge of the relevant bankruptcy proceeding). Finally, Guerra does not contest that the discharge prevents her from obtaining the damages she seeks. Pls. Reply/Opp. at 4. Therefore, the police and regulatory power exemption does not provide a basis for her claims to move forward here.

Guerra also argues that Trece should remain in the case because Trece and Lim are joint employers and thus "Trece's actions, and a finding of its violation of wage and discrimination laws" are tied to the claims against defendant Lim. *Id.* However, the FLSA and NYLL provide for individual liability for a co-employer. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013); *see also Teri v. Spinelli*, 980 F. Supp. 2d 366, 375 (E.D.N.Y. 2013) (noting that district courts have interpreted the NYLL's joint employer test coextensively with the FLSA's). Each defendant that is found liable under the FLSA and NYLL as an employer will be jointly and severally liable for all damages. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 236–38 (S.D.N.Y. 2002). Therefore, nothing about Trece's bankruptcy discharge impacts Guerra's ability to seek recovery from Lim individually. The Court will thus grant summary judgment for defendants and dismiss all claims against Trece.

### c. Guerra's Claims Under the NYSHRL and NYCHRL Are Dismissed for Lack of Subject Matter Jurisdiction

Guerra brings claims under New York State and City Human Rights Laws, New York Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL"), respectively, against Defendants for allegedly terminating her because she was pregnant. Guerra argues that this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(a), a federal court may exercise

supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Such claims are considered part of the same case or controversy if they derive from the same "common nucleus of operative fact" as the federal claims. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks and citation omitted).  This criteria is met when the state claims arise out of "approximately the same set of events" as the federal claims.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002).

Numerous courts in this District have addressed the circumstances under which a court hearing FLSA and NYLL wage and hour claims will have supplemental jurisdiction over other state law claims.[7]  The general rule is that, when the only possible "common nucleus of operative fact" alleged between the claims is the existence of a common employment relationship, there is no supplemental jurisdiction.  *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008).  In *Torres*, the court found that it had no jurisdiction over a corporation's counterclaims alleging that two of the plaintiff employees had engaged in sexual harassment and credit card fraud.  *Id.* at 466–69.  The court found that "none of the events alleged in Gristede's [counterclaims] are relevant to Plaintiffs' [FLSA] claims . . . Gristede's does not allege, for instance, that it did not pay [Plaintiffs] premium overtime compensation *because of* their alleged misconduct."  *Id.* at 468 (emphasis added).  Thus, the mere fact that there was a common employer/employee relationship between the parties did not establish supplemental jurisdiction, without evidence of some further factual connection between the claims.  *See also Dervisevic v. Wolfgang's Steakhouse, Inc.*, No. 19 Civ. 814 (VEC), 2019 WL 6251197, at *3 (S.D.N.Y. Nov.

---

[7] The parties do not dispute that this Court has supplemental jurisdiction over Guerra's NYLL wage and hour claims.

22, 2019) (FLSA wage and hour action provided no supplemental jurisdiction over state law religious discrimination claims when those claims dealt with different time periods and different facts than the wage and hour claims); *Hahn v. Rocky Mountain Express Corp.*, No. 11 Civ. 8512 (LTS) (GWG), 2012 WL 2930220, at *1 (S.D.N.Y. July 12, 2020) (FLSA overtime action provided no supplemental jurisdiction over age discrimination claim when employee's termination was not related to his overtime claim).

Conversely, there will be supplemental jurisdiction if the state law claims are in some way connected to the facts or events underlying the FLSA claims.  For example, in *Rivera v. Ndola Pharmacy Corp.*, the court found that it had supplemental jurisdiction over a plaintiff's state sexual harassment claim when the plaintiff alleged that her rate of pay—and thus, the amount she sought to recover through her FLSA claims—was based on her agreement to accompany one of the defendants to breakfast and lunch, where the alleged harassment occurred. 497 F. Supp. 2d 381, 393 (E.D.N.Y. 2007).  This made her sexual harassment claim "intricately connected to her FLSA overtime claim" because it was "directly linked to her allegations that her wages were $500 per week."  *Id.*  The *Rivera* court found that it did not, however, have jurisdiction over other state law harassment and tort claims that "involve[d] both different rights and underlying facts than plaintiff's overtime claims."  *Id.* at 394.  Similarly, in *Munguia v. Bhuiyan*, the court permitted the plaintiff to plead a state law race discrimination claim when doing so was "relevant to the issue of plaintiff's wages because [he] alleges that [defendants] decreased [his] wages" as a result of that racial discrimination.  No. 11 Civ. 3581 (JBW) (MDG), 2012 WL 526541, at *3 (E.D.N.Y. Feb. 16, 2012) (internal citations and quotation marks omitted, alterations in original).[8]

---

[8] Guerra also cites *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 Civ. 5119 (RA), 2015 WL 3999161 (S.D.N.Y. June 30, 2015) to support her invocation of supplemental jurisdiction.  She is right that the court in *Sanchez*

The facts alleged in support of Guerra's pregnancy discrimination claim do not substantially overlap with the facts supporting her FLSA and NYLL claims such that they provide a basis for supplemental jurisdiction.  Guerra alleges that after she informed Ortega she was pregnant, she was told not to come back to work because of "the situation [she] was in." Supp. Guerra Decl. at ¶¶ 5–8.  However, Guerra does not allege any sort of relationship between this exchange and Defendants' FLSA or NYLL violations, aside from the existence of a common employer relationship.  For example, Guerra never alleges that her rate of pay or the length of her typical shift changed as a result of her pregnancy.  On the contrary, she notes that she did not request any accommodation due to the pregnancy.  Guerra Decl. at ¶ 25.  Finally, she does not bring any other claims that could provide a basis for this Court's supplemental jurisdiction.[9]

Guerra argues that her pregnancy discrimination claims share common facts with the FLSA and NYLL claims because they both require an examination of the extent of Lim's power and authority as an employer.  Pls. Reply/Opp. at 3–4 (citing relevant inquiries such as whether Lim had the power to hire and fire workers, control workers' schedules or conditions, and whether he maintained employment records).  It is true that these questions about Lim's role are relevant to whether he may be held liable under both the FLSA and NYLL and the state law

---

permitted the plaintiffs to amend their FLSA complaint to include a state law pregnancy discrimination claim, reasoning that "the claims relate to [an individual plaintiff's] employment by Defendants during the same time period."  2015 WL 3999161 at *6.  However, *Sanchez* arose in the context of an unopposed motion to amend the plaintiffs' complaint.  *Id.*  For this reason, and in the interest of judicial economy, the court decided to "liberally constr[e]" its supplemental jurisdiction and permitted the plaintiffs to develop the claim.  *Id.*  Here, however, the issue is fully briefed and vigorously contested, and it is clear that no common nucleus of operative fact exists.

[9] While Guerra's Complaint briefly references Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.*, she does not bring a cause of action or invoke the Court's jurisdiction under Title VII.  *See* Compl. at ¶¶ 6, 44–81.  Rather, she notes that she "intends to amend the instant Complaint to include a cause of action under Title VII after receiving a Right to Sue Letter from the EEOC."  Compl. at ¶ 4.  No amended complaint was ever filed.  Guerra also has not argued that Title VII provides a basis for supplemental jurisdiction in her briefs.  Thus, there is no claim currently before the Court that could provide a basis for jurisdiction here.

pregnancy discrimination claims.[10]  However, this factual overlap is only relevant insofar as it

establishes that Lim is an "employer" under relevant law.  But, as discussed above, a defendant's

legal status as an "employer" still does not, without more, establish supplemental jurisdiction for

all claims in which a common employer relationship exists.  *See Torres*, 628 F. Supp. 2d at 468.

Rather, the claims must arise out of the same series of events.  *See Dervisevic*, 2019 WL

6251197, at *3 (events and facts underlying religious discrimination claim were different from

those underlying FLSA claim notwithstanding some overlap in facts regarding the employment

relationship).  Guerra's argument therefore fails because she lacks a sufficient connection

between the underlying events that are a basis for the merits of her FLSA claims—such as her

rate of pay, her typical hours worked, and whether wage statements or notices were issued—and

the series of events that led to her alleged termination.  *Id.*

Guerra finally argues that this Court should weigh "the traditional values of judicial

economy, convenience, fairness and comity" and choose to exercise supplemental jurisdiction in

this case as a matter of discretion.  Pls. Reply/Opp. at 4 (citing *Mendez v. K & Y Peace Corp.*,

No. 16 Civ. 5562 (SN), 2019 WL 2223220, at *1 (S.D.N.Y. May 22, 2019)).  However, the

discussion in *Mendez* pertained to a different section of § 1367 than governs here.  In *Mendez*,

the court had previously found that a defendant's state law cross-claims had a common nucleus

of operative fact with the plaintiffs' FLSA claims, providing it with supplemental jurisdiction

under § 1367(a).  2019 WL 2223220, at *1.  Therefore, the question in *Mendez* was whether the

---

[10] The employer test under the FLSA and NYLL is similar but not identical to the test under the NYSHRL and
NYCHRL.  The FLSA/NYLL test requires consideration of non-exhaustive factors including "whether the alleged
employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules
or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment
records."  *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12 (2d Cir. 1984) (citation and quotation marks omitted).
The employer test under the NYSHRL and NYCHRL requires consideration of "(1) the selection and engagement of
the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the
servant's conduct."  *Griffin v. Serva, Inc.*, 29 N.Y.3d 174, 186 (2017) (quoting *State Div. of Human Rights v. GTE
Corp.*, 109 A.D.2d 1082, 1083 (4th Dep't 1985)).

court should exercise its discretion to *retain* those state law cross-claims after the FLSA claims were dismissed. *Id.* That question is governed by § 1367(c), which provides that a court which otherwise has supplemental jurisdiction over state law claims "*may* decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." (emphasis added). In other words, the discretionary factors that Guerra would like the Court to consider are only relevant after a court has already determined it has supplemental jurisdiction under § 1367(a). Here, however, the Court has no such jurisdiction, so the NYSHRL and NYCHRL claims must be dismissed. *See Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18 Civ. 856 (BMC), 2020 WL 4572064, at *2 (E.D.N.Y. Aug. 7, 2020) (finding that the court was unable to retain supplemental jurisdiction under 1367(c) when "[the court has] no supplemental jurisdiction to decline to exercise in the first place.").

Because the Court has no jurisdiction over Guerra's pregnancy discrimination claims, it grants Defendants' motion for summary judgment on these claims and dismisses them. Defendants have also moved for summary judgment on the question of whether Lim is an "employer" under NYSHRL or NYCHRL. *See* Defs' MSJ Notice. Because the Court is without jurisdiction to hear the NYSHRL or NYCHRL claims, it denies Defendants' motion for summary judgment on Lim's employer status under these laws as moot. Similarly, Guerra moves for summary judgment on Lim's liability for these claims. *See* MSJ Notice. Plaintiff's motion for summary judgment on the NYSHRL and NYCHRL claims is therefore also denied as moot.

### d.  Guerra's Claims Against Lim

Guerra brings several remaining claims against Lim under the FLSA and NYLL. Because liability hinges on whether Lim is an "employer" under these statutes, the Court addresses this issue first.

### i.  Lim Is an "Employer" Under the FLSA and NYLL

The FLSA does not include a definition of an "employer" in the first instance, providing only that the term includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *See*  29 U.S.C. § 203(d).  However, it is well-settled that this term is interpreted broadly in the FLSA context, reaching beyond traditional agency law principles in order to "effectuate the remedial purposes of the act."  *See Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945)).  Therefore, this Court's determination of whether Lim was an employer under the FLSA must be grounded in "economic reality rather than technical concepts."  *Id.* (internal quotation marks and citation omitted).

The Second Circuit considers the following four factors when assessing whether an individual is liable as an employer for FLSA violations: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Comm. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citation omitted).  These factors are to be considered in the totality of the circumstances.  *Barfield*, 537 F.3d at 143.  None of the factors are dispositive, nor are they exclusive.  *Id.* at 142–3.  In addition to these factors, the court may also consider any other relevant evidence of "functional control over workers even in the absence of the formal control

measured by the *Carter* factors." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003).

The New York Court of Appeals has not explicitly decided whether the standard for determining whether someone is an employer under NYLL is coextensive with the FLSA analysis. *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *8 (S.D.N.Y. Mar. 18, 2019). However, the statutory standard is "nearly identical." *See Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014); NYLL § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). As a result, courts in this District have routinely applied the same tests to determine whether an individual is jointly liable as an employer under the FLSA and NYLL. *Olvera*, 73 F. Supp. 3d at 206. The Court will do so here.

### 1. The Power to Hire and Fire Employees

It is undisputed that Lim at least had the power to hire and fire employees. Defs' 56.1 at ¶¶ 42, 45; Interrog. Reply at No. 5; Lim Depo. at 19:16–17; 25:23–26:3. Defendants' sole argument on this point is that Lim did not exercise that power with frequency. *See, e.g.*, Defs' 56.1 at ¶ 42 ("Lim only hired a manager, Jose Ortega").[11]

This position is foreclosed by binding precedent. In *Irizarry v. Catsimatidis*, the Second Circuit considered a similar situation in which defendant Catsmatidis "possesse[d], but rarely exercise[d], the power to hire or fire anyone he chooses." 722 F.3d 99, 114 (2d Cir. 2013).

---

[11] The precise number of people hired by Lim is disputed by the parties and Defendants' position on this fact is internally inconsistent. *Compare* Guerra Decl. at ¶ 4 (claiming Lim hired Guerra) *with* Lim Depo. at 25:6–11 (claiming Lim only hired two managers); Defs' 56.1 at ¶ 42 (claiming Lim only hired one manager, Jose Ortega). However, because the test requires consideration of the *power* to hire and fire employees, not the number of times that power was exercised, this dispute is not material to the question of whether Lim was an employer under the FLSA and NYLL. *See Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999).

Rather, in practice, Catsmatidis would typically delegate hiring and firing duties, though his supervisees might inform him of their decisions as a courtesy. *Id.* The Court found that such hiring and firing power was "a strong indication of control" over his company. *Id.* at 114, 116 (citing *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999). This control in turn weighed in favor of his status as an employer. *Id.* at 116; *see also Herman*, 172 F.3d at 139 ("Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA . . . .").

Nearly identical circumstances existed here. Lim testified that, while he had hiring and firing power, he typically left individual personnel decisions to other managers. Lim Depo. at 24:13–17. He testified that he would "sometimes" hear about such decisions from the other managers, but "not every time." Lim Depo. at 25:14–22. Thus, even construing the facts most favorably for Lim, he had hiring and firing power over employees at Trece. This factor therefore weighs in favor of finding that Lim was an employer.

## 2. Supervision and Control of Work Schedules or Employment Conditions

The record shows that Lim sometimes set work schedules, though he more frequently delegated this job other managers as well. *See* Guerra Decl. at ¶ 13 ("[Lim] sometimes set our schedules"); Lim Depo. at 38:1–5 ("Sometimes I made [the work schedules]."). Here, the Court notes that Lim's Declaration dated August 23, 2020 somewhat contradicts his deposition testimony. *See* Doc. 55 ("Lim Decl."). For example, in the Declaration, Lim backtracks on his representation that he "sometimes" set work schedules, instead categorically stating that "[t]he managers, Manuel or Jose Ortega, would set the employees' schedules." *Id.* at ¶ 8. It is well-settled that a party "may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Trans-Orient*

*Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991).  Thus, while the Court is obligated to draw all inferences in Lim's favor as the non-moving party, it is not obligated to consider Lim's declaration to the extent it directly conflicts with his deposition testimony and/or interrogatory responses, as it does here.[12]

While the record does not reveal the precise frequency with which Lim set schedules, the Court finds that he had at least occasional involvement in doing so.  Guerra Decl. at ¶ 13; Lim Depo. at 38:1–5.  Lim also testified that he would go to the restaurant several times per week to assess restaurant conditions by "talk[ing] to the manager if there's any things—any maintenance issues or if there's anything to follow up [on]."  Lim Depo. at 29:19–30:2.  These undisputed facts also weigh in favor of Lim's status as an employer.  *See Herman*, 172 F.3d at 140 (finding the second factor supported by evidence when an employer at least "on occasion[] supervised and controlled employee work schedules and the conditions of employment." ).  Similarly to Lim's sporadic exercise of his hiring and firing duties, this factor does not require that the employer exercise their power to control work conditions with any particular level of frequency to weigh in favor of employer status.  *Id.* at 139.

### 3.   Determination of the Method and Rate of Payment

It is undisputed that Lim paid Trece employees, both by cash and by paychecks that he signed.  Defs' 56.1 at ¶ 49; *see also* Guerra Decl. at ¶ 13, Lim. Depo. at 27:16–24.  Lim also originally declared, in response to Plaintiff's interrogatories, that "Only Joel Lim" was

---

[12] In their brief, Defendants also make the unusual request that the Court strike Lim's own interrogatory responses (which include his testimony that he set schedules), alleging that these responses had not been sworn.  Doc. 54, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment ("Defs' MSJ Br.") at 10.  However, Plaintiff submitted documents signed by Lim swearing to the accuracy of Defendants' interrogatory responses.  *See* Doc. 59-14, Supp. Robins Decl. Ex. N.  Setting aside the fact that Defendants should have known that their own interrogatory responses were sworn, the Court will consider these responses, and will read them in conjunction with Lim's more specific sworn testimony at his deposition.

responsible for "calculating the time the Plaintiff worked, issuing and authorizing weekly paychecks, and maintaining payroll records," and for "determining the Plaintiff's compensation." Interrog. Reply at Nos. 6-7. Lim somewhat backtracked at his deposition, testifying that "the manager gave me the paperwork, how much the schedules and the rate of work" and that he remitted payment to employees on this basis. Lim Depo at 28:3–5; *see also* Lim Decl. at ¶ 10. Lim also testified that these pay schedules were based off of typical payment rates in Mexican restaurants in New York City. *See* Lim Depo. at 29:3–16.

Lim's testimony weighs in favor of his status as an employer under the third *Carter* factor. While Lim argues that Ortega and the other manager were the ones who actually calculated the payment rate, it is undisputed that these calculations were then forwarded to Lim, who had authority over processing the payments. Lim. Depo. at 27:16–28:5. Moreover, it is undisputed that Lim was responsible for "the operation of the business" regarding matters like purchasing items and paying bills. Defs' 56.1 at ¶ 41 (citing Lim Depo. at 23:18–24:17, Lim Decl. at ¶ 3). Reading Lim's testimony together with his interrogatory responses, the Court finds that Lim had ultimate responsibility over payroll matters and signed off on his staff's pay, even though he delegated the initial setting and calculation of pay rates to the other managers. This power, even if delegated on a day-to-day basis, weighs in favor of individual liability under FLSA and NYLL. *See Herman*, 172 F.3d at 140 (the third factor weighed in favor of liability when defendant was not involved with determining pay rates, but had power to sign checks and dictate the method of payments); *Irizarry*, 722 F.3d at 115 (the third factor suggested financial control of the company, and thus weighed in favor of liability, when employer did not keep track of individual salaries or schedules but kept track of payroll expenses as they related to other company expenses).

#### 4.   Maintenance of Employment Records

In many instances, Trece simply did not keep records.  *See, e.g.*, Defs' 56.1 at ¶¶ 17–20 (conceding that Trece did not keep records showing tips received, deductions from Plaintiffs' wages, posted notices to employees, or policies regarding deductions).  To the extent records were kept, Lim may have had some involvement, but the extent of this involvement is unclear.  In an interrogatory response, Lim stated that he was responsible for "maintaining payroll records."  Interrog. Reply at No. 6.  However, other evidence suggests that this was generally done by the other managers at Trece.  *See* Lim Depo. at 27:13–14 (noting that other managers kept records of time worked).  Lim acknowledges that he would have at least had access to employee records, however, stating that he "has time sheet records of Plaintiff Guerra from 2013 to 2016," as well as certain other records.  *See* Doc. 59-1, Supp. Robins Decl. Ex. A ("Defs' RFP Response") at No. 35.[13]  Similarly, confirmation of cash payments made to employees were kept in the Trece office, but the record does not reveal who was responsible for maintaining these.  *See* Interrog. Reply at No. 9.  Thus, this factor weighs only slightly in favor of liability, if at all.  *Cf. Irizarry*, 722 F.3d at 116 (factor not met when Defendant merely "work[ed] in the same office where employment records are kept.").  However, as the court in *Irizarry* observed, even the complete failure to meet the fourth factor is "not dispositive."  *Id.* at 106  (citing *Herman*, 172 F.3d at 140).

---

[13] In his responses to Interrogatories 10 and 11, Lim also concedes that he and Jose Ortega maintained some "documents" on a computer kept at the Trece business office that was used "to conduct business."  However, this response does not provide the Court with sufficient information to assess what these referenced documents were.

### 5.   The Totality of the Circumstances

The Court finds that three of the four *Carter* factors weigh significantly in favor of holding Lim liable as a co-employer.  The Court therefore finds, in the totality of the circumstances, that Lim was an employer under the FLSA and NYLL.[14]

### ii.   Guerra's Minimum Wage and Tip Credit Claims Under the FLSA and NYLL

There is no dispute that Guerra was paid a sub-minimum wage rate.  *See* Defs' 56.1 at ¶ 25 (conceding that Defendants paid Guerra below the minimum wage).  The time records produced by Trece show that she was paid $40 per shift from March 2013 to early February 2014, and $25 per shift after that, through the end of her employment in December 2016.  Time Summary at 7–13; *see also* Doc. 59-5, Supp. Robins Decl. Ex. E.  Even construing the facts most favorably for Lim and assuming that each shift was eight, not ten hours long, this would amount to an hourly wage of about $5.00 per hour from March 2013 through February 2014, and $3.13 per hour after that.  This was considerably lower than New York's minimum wage rate at all relevant times.  At the beginning of her employment in March 2013, the New York minimum wage was $7.25 per hour.  NYLL § 652; *see also Castellanos v. Deli Casagrande Corp*., No. 11 Civ. 245 (JFB) (AKT), 2013 WL 1207058, at *4 (E.D.N.Y. Mar. 7, 2013) (noting that New York's minimum wage was increased from $7.15 to $7.25 per hour in 2009 to comport with an increase in the federal minimum wage).   In the calendar year 2014, it was $8.00 per hour.  NYLL § 652.  In calendar year 2015, it was $8.75 per hour.  *Id.*  Finally, in calendar year 2016, it was $9.00 per hour.  *Id.*

---

[14] The Court also notes that this determination is consistent with the New York State Department of Labor's ("NYSDOL's") identification of Lim as an employer following an NYSDOL investigation into Trece's labor practices between 2015 and 2018.  *See* Doc. 59-8, Supp. Robins Decl. Ex. H ("NYSDOL letter") at 2.

In determining that Guerra was paid at a sub-minimum wage rate, the Court also notes that Defendants were not eligible to take a tip credit, and thus Guerra was owed New York's standard minimum wage, not any reduced amount.  Under the FLSA and New York law, employers are permitted under certain circumstances to take a credit against the minimum wage owed if employees regularly received tips.  *See* 29 U.S.C. § 203(m); 12 NYCRR § 146–1.3. However, under both laws, there must be notice to the employee that a tip credit will be taken. *See* 29 U.S.C. § 203(m) ("[The tip credit provision] shall not apply with respect to any tipped employee unless such employee has been informed by the employer . . . ."); 12 NYCRR § 146–1.3 (requiring that "the employee has been notified of the tip credit as required in section 146-2.2 of this Part.").[15]  Here, it is undisputed that Guerra was not provided notice of Trece's intent to take a tip credit.  Defs' 56.1 at ¶¶ 31–32.  Thus, no tip credit may be applied.  *See Inclan v. N.Y. Hosp. Grp, Inc.*, 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015) (defendants were not eligible to take a tip credit under the FLSA or NYLL where there was no evidence they gave plaintiffs proper notice as required by either statute).

Guerra has established that Lim violated the FLSA and NYLL's minimum wage and tip credit provisions.  The court therefore grants Guerra's motion for summary judgment on these claims against Lim.  However, as described in more detail in Section III.d.iii., *infra*, there is a material question of fact as to the damages she is owed because there is a material question of fact as to how many hours she worked per day.[16]  This question of fact must be resolved before

---

[15] 12 NYCRR §146-2.2 in turn requires written notice of the tip credit.

[16] Plaintiff also alleges that she was not paid at all for the last three weeks of her employment.  MSJ Br. at 11, Guerra Decl. at ¶¶ 22–23.  Defendants dispute this, arguing that she was paid for all shifts she worked.  Lim Decl. at ¶ 15.  Trece's records are inconclusive.  *See* Time Summary at 3 (showing three weeks in December 2016 for which no payment was recorded, but that are also marked "NO SHIFT").  Thus, in addition to the question of how many hours she worked per shift, there is a question of fact as to whether Guerra worked at all between December 11, 2016 and January 1, 2017.  However, resolution of this factual question goes only to damages, and does not impact Lim's liability for the minimum wage law violation.

the Court may determine what her effective hourly rate of pay was, which in turn is necessary to compute damages.

### iii.   Guerra's Overtime Premium Claims Under the FLSA and NYLL

The FLSA and NYLL both require that eligible employees be compensated at a "rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013).  Under the FLSA, an employee bringing an action for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (superseded by statute on other grounds)).  When a defendant's records are incomplete or inadequate, a plaintiff may meet this burden by relying solely on his or her recollection.  *Id.* (citing *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).  While the Court generally may not assess a witness's credibility at the summary judgment stage, it is nevertheless not obligated to credit a plaintiff's testimony when it is so unreliable that no reasonable person could believe it.  *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005).

Defendants concede that Guerra never received any overtime premium pay.  Defs' 56.1 at ¶ 24.  They also concede that Guerra's hours exceeded 40 per week for a single week:  April 29 to May 5, 2013, when she worked six shifts, amounting to at least 48 hours of work.  *Id.* at ¶ 26.[17]  Thus, the Court will grant summary judgment on her overtime premium claim for that week.  However, as discussed herein, the Court finds that there is a material question of fact as to

---

[17] Because the parties agree that shifts were at least eight hours, the Court finds that Guerra worked at least 48 hours that week.  However, depending on how long she worked each day, she may have worked as many as 60 hours that week.

the number of hours per day that she worked throughout her tenure, and thus regarding how many weeks she worked over 40 hours in total.  This also creates a material question of fact regarding how much she is owed in damages for unpaid overtime premiums, as Guerra can only recover overtime premiums for weeks that she worked over 40 hours.  *See Nakahata*, 723 F.3d at 201.

The crux of the disagreement is the question of how long Guerra's "shift" was.  Guerra was always paid by the shift.  Defs' 56.1 at ¶ 21.  Guerra's affidavit alleges that each shift was typically 10 hours.  Guerra Decl. at ¶ 16.  She testifies that she worked about 51 hours per week, or five shifts per week, from October 2013 through December 2015, and thus is owed overtime premiums for this entire period.  Guerra Decl. ¶ 15.  She alleges that her typical hours for these shifts were 4 p.m. to about 2:15 a.m.  *Id.* at ¶ 16.

Defendants dispute this testimony, relying on payroll records stating that each shift worked was only eight hours long.  *See, e.g.*, Time Summary at 1.  Lim testified that he did not remember when Guerra started or finished her shifts.  Lim Depo. at 33:5–8.  However, he later submitted a declaration stating that, while he could not recall Guerra's hours specifically, the typical dinner shift for waitresses like Guerra was from 4 p.m. to 11 p.m. on weekdays, and until 12 a.m. on weekends.  Lim Decl. at ¶¶ 12–13.  Trece's time records provide some guidance as well.  The records categorize shifts as either "lunch" or "dinner," but do not specify the exact number of hours the wait staff worked per shift.  *See, e.g.*, Doc. 52-8, Morrison Ex. H ("2014 Schedule").  However, some of these schedules show that the kitchen closed at 10:30 p.m. on weeknights and 12 a.m. on weekends.  *Id.*[18]

---

[18] These records do not, however, show the kitchen hours for the entire time period in question.  *See, e.g.*, 2014 Schedule (showing kitchen hours for only three weeks in 2014).

Defendants' pay records have sufficiently created a disputed issue of material fact as to which days, if any, Guerra's shift exceeded 10 hours.  However, notwithstanding these time records, a reasonable jury could also credit Guerra's testimony that she worked until about 2:15 a.m., because a waitress or bartender would not necessarily stop working after a restaurant's kitchen closed.  Moreover, Defendants do not dispute that they "paid Plaintiff the same rate regardless of how many hours she worked."  Defs' 56.1 at ¶ 23.  Thus, there is disputed issue of fact regarding the length of Guerra's shift, and the total number of weeks that she worked over 40 hours.  Summary judgment is therefore granted on this claim for the week of April 29 to May 5, 2013, but otherwise denied.  At trial, Guerra may proffer additional testimony to support her allegations that she regularly worked until 2:15 a.m.

### iv.  Guerra's Spread of Hours Claim

Under NYLL, Guerra is entitled to one extra hour's pay at minimum wage for every day that she worked over ten hours per day.  12 NYCRR § 146-1.6.  This "spread of hours" pay includes "working time plus time off for meals plus intervals off duty."  *Id.*  It applies to all restaurant employees, regardless of whether they are paid at minimum wage.  *Feng Chen v. Patel*, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *10 (S.D.N.Y. July 2, 2019).

It is undisputed that Defendant Lim did not provide spread of hours pay; indeed he admits that he did not know what it was.  *See* Defs' 56.1 at ¶ 37; Lim Depo. at 33:25–34:2.  It is also undisputed that Defendants kept no documents relating to spread of hours pay.  Defs' 56.1 at ¶ 38.  Finally, the payroll records proffered by Defendants do not include any reference to spread of hours pay.  *See* Time Summary; *see also* Supp. Robins Decl. Exs. E–G.

However, Defendants *do* dispute whether Guerra was owed spread of hours pay as a matter of law, arguing that there are disputed issues of material fact as to whether she ever

worked more than ten hours per day.  *See* Defs' 56.1 at ¶ 34.  For the same reasons as those

pertaining to Guerra's overtime claims described in Section III.d.iii., *supra*, the Court agrees.

There is a material question of fact as to whether Guerra ever worked over 10 hours in any shift,

and thus whether she is entitled to any spread of hours pay.  However, if Guerra establishes at

trial that she did work shifts that were at least 10 hours long, she will be entitled to spread of

hours pay for these shifts.

### v.   Guerra's Claim That She Was Unlawfully Paid by Shift, Not by Hour

Under New York law, employees in the hospitality industry, including restaurant

employees, must be paid by the hour, not by a set shift rate.  *See* 12 NYCRR § 146-2.5

("Employers may not pay employees on a daily, weekly, salary, piece rate or other non-hourly

basis."); *see also Romero v. Rung Charoen Sub, Inc.*, No. 16 Civ. 1239 (VMS), 2017 WL

4480758, at *10 (E.D.N.Y. Sept. 30, 2017) (same).

Here, Defendants do not dispute that they paid Guerra by the shift, not by the hour.  Defs'

56.1 at ¶¶ 21–23.  Defendants argue, however, that this regulation does not provide an

independent basis of liability.  Defs' MSJ Br. at 13.  Defendants are correct in this respect.  New

York law provides that "[i]f an employer fails to pay an employee an hourly rate of pay, the

employee's regular hourly rate of pay shall be calculated by dividing the employee's total

weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the

actual number of hours worked by that employee during the work week."  12 NYCRR § 146-3.5.

Thus, § 146-2.5 and § 146-3.5 are best understood as regulations providing guidance to courts

that are tasked with calculating an hourly wage rate for employees who were not paid by the

hour.  *Cf. Romero*, 2017 WL 4480758, at *10 (applying § 146-2.5 and § 146-3.5 in the court's

calculation of a plaintiff's hourly wages and overtime premiums, but not as an independent

source of liability).  But this Court is not aware of any authority providing for standalone damages for failure to follow these regulations.

The Court thus finds that Plaintiff was paid by the shift, not by the hour, in violation of § 146-2.5.  Plaintiff's motion for summary judgment on this issue is nevertheless denied for failure to state a claim, because there is no independent basis of liability under § 146-2.5.  The Court will, however, be obligated to apply § 146-2.5 and § 146-3.5 when assessing the damages owed to Guerra once a finding can be made regarding the total hours she worked per shift.

### vi.  Guerra's Claim for Misdirected Tips

New York Labor Law prohibits employers or others who do not customarily receive tips from "retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee."  NYLL § 196-d.  Restaurant managers cannot share in gratuities when they do not customarily receive tips, or when they have "meaningful or significant authority or control over [their] subordinates."  *Barenboim v. Starbucks Corp.*, 549 F.App'x 1, 3 (2d Cir. 2013) (internal quotation marks and citation omitted).

Guerra alleges that she was "forced to share tips with management."  Guerra Decl. at ¶ 19.  If true, this would establish a violation of NYLL § 196-d.  *See Patel*, 2019 WL 2763836, at *12 (noting that § 196-d of the NYLL prevents employers from appropriating any tips received by an employee).[19]  Defendant Lim testifies that he "never kept any tips or gratuities paid by customers for myself," nor, to his knowledge, "did any managers[.]"  Lim Decl. at ¶ 14.  The record does not reveal any other evidence pertaining to whether or not tips were retained by

---

[19] For the reasons discussed in Section III.d.i., *supra*, Lim is an employer under the NYLL and thus would not have been permitted to retain tips.

management.[20]  Thus, unless additional evidence of tip appropriation surfaces, this claim must be

decided based on whether Guerra or Lim's testimony is deemed more credible.  Thus, summary

judgment is denied for this claim.  *See Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (courts

should "eschew credibility assessments" at the summary judgment stage).  At trial, the parties

may testify and/or proffer additional witnesses regarding whether any tips were unlawfully

appropriated.

### vii.   Guerra's Claims for Wage Notice and Wage Statement Violations

The NYLL requires employers to provide employees with notices at the beginning of

their employment showing, among other requirements, "the rate or rates of pay and basis thereof,

whether paid by the hour . . . allowances, if any, claimed as part of the minimum wage . . . any

'doing business as' names used by the employer; the physical address of the employer's main

office or principal place of business, and . . . the telephone number of the employer."  NYLL §

195(1-a).  Failure to do so renders employers liable for damages under NYLL § 198(1-b).  Under

the version of the law in effect when Guerra was hired, employees could recover $50 per week,

up to a total of $2,500, for each week they worked without receiving such notice.  *See Kim v.

Kum Gang, Inc.*, No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *31 (S.D.N.Y. Mar. 19, 2015).

After revisions to the law became effective on February 27, 2015, workers could recover up to

$50 per work day, up to a total of $5,000 in statutory damages.  *See Cabrera v. 1560 Chirp

Corp.*, 15 Civ. 8194 (TPG) (DF), 2017 WL 1289349, at *13 (S.D.N.Y. Mar. 6, 2017).

The NYLL also requires employers to provide employees with wage statements showing

"a statement with every payment of wages, listing . . . the dates of work covered by that payment

---

[20] Defendants' position on this issue in their 56.1 statement is internally inconsistent.  *Compare* Defs' 56.1 at ¶ 28 (stating that it was "undisputed" that Guerra was forced to share her tips with management) *with* Defs' 56.1 at ¶ 33 (disputing that Guerra was forced to share her tips with management, citing Lim's declaration).

of wages . . . whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  NYLL § 195(3).  Similarly to § 195(1-a), failure to comply subjected employers to damages of up to $100 per work week, with a cap of $2,500 before February 27, 2015.  *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 511 (S.D.N.Y. 2017).  Available damages increased to $250 per day, up to $5,000 in total, after revisions to the law took effect on February 27, 2015.  *See Cabrera*, 2017 WL 1289349, at *6.

Here, it is undisputed that Defendants did not provide Guerra with either the wage notices or wage statements required by NYLL § 195.  *See* Defs' 56.1 at ¶ 8.  Moreover, Defendants have no records of any such statements.  *Id.* at ¶¶ 7, 9. The Court therefore grants Guerra's motion for summary judgment on her wage notice and wage statement claims.  Lim is liable for statutory damages for failure to provide Guerra with wage notices and wage statements under NYLL § 198, as discussed in more detail in Section III.e., *infra*.

### e.  Damages

#### i.  Availability of Liquidated Damages Under the FLSA and NYLL Stemming from Guerra's Minimum Wage Claims

Both the FLSA and NYLL permit employees to recover liquidated damages against an employer who violates the minimum wage and overtime laws.  *See* 29 U.S.C. §§ 216(b), 260; NYLL § 198.  Both provisions allow employees to recover up to the full amount owed in unpaid minimum wage or overtime, as the case may be.  *Rana v. Islam*, 887 F.3d 118, 122–3 (2d Cir. 2018) (noting that there are "no meaningful differences" between the purpose or effect of the laws' liquidated damages provisions).

Under the FLSA, liquidated damages will be awarded unless the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  The employer "bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness."  *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks and citations omitted).  Similarly, under NYLL, an employer must show "a good faith basis to believe that its underpayment of wages was in compliance with the law."  *Rana*, 887 F.3d at 123 (quoting NYLL § 198).  To establish good faith, an employer must "take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman*, 172 F.3d at 142.  A finding that an employer either "knew or showed reckless disregard" for relevant labor law supports an award of liquidated damages.  *Harold Levinson Associates, Inc. v. Chao*, 37 F.App'x 19, 22 (2d Cir. 2002) (quoting *Herman*, 172 F.3d at 141).  However, because the laws' liquidated damages provisions are nearly identical, plaintiffs may not recover liquidated damages under both laws.  *Rana*, 887 F.3d at 123.

As discussed in Section III.d., *supra*, there is a material question of fact as to the length of Guerra's typical shift at Trece.  This precludes the Court from determining the exact amount of damages owed to Guerra for any of her claims except the wage statement and wage notice claims, because all other calculations depend to some degree on how many hours per day she worked.  It also prevents the Court from determining at this stage whether any damages will be awarded for NYLL spread of hours violations, misappropriation of tips, or unpaid overtime outside of the week of April 29 to May 5, 2013, as there are material questions of fact as to whether Defendants are liable for these violations.  There is, however, is sufficient evidence for

the Court to conclude that Guerra is entitled to liquidated damages for her minimum wage claim and her overtime claim from the week of April 29 to May 5, 2013, notwithstanding the remaining questions of fact as to how many hours per day she worked.

This is because, to avoid liquidated damages under the FLSA and NYLL, employers must at least make good-faith attempts to ascertain and comply with relevant wage and hour provisions. *See Rana*, 887 F.3d at 123; *see also Chao*, 37 F.App'x at 22–23. Here, Defendants make no attempt to argue that Guerra was an exempt employee or that she was otherwise not entitled to a minimum wage rate or overtime compensation under the FLSA and NYLL. *See* Defs' 56.1 at ¶¶ 21–23 (conceding Guerra was paid by the shift, not hourly, and that she received a set rate for each shift regardless of the number of hours worked); ¶ 25 (conceding that this arrangement resulted in a sub-minimum wage rate of pay). Moreover, Defendants' own records demonstrate their contemporaneous awareness that such wages were legally inadequate. For example, Guerra's time summary document shows that on the week of April 29 to May 5, 2013, Guerra was paid $240 for working six shifts, at a rate of $40 per shift. Time Summary at 11. To the right of the $240 figure, the document includes columns showing the number of hours worked that week (48), and the amount that would be owed to her by law based on the then-minimum wage hourly rate of $7.25 per hour if it were applied ($348). *Id.* Thus, even setting aside the fact the 48-hour figure is disputed because Guerra may have worked longer than eight-hour shifts, Defendants' own records show that Guerra was underpaid by at least $108 that week. *Id.* Moreover, these records also make clear that there was never any attempt to add an overtime premium. *Id.* Similar discrepancies between the amounts paid and the amounts that would be owed under the relevant minimum wage at the time are shown each week throughout Defendants' time records. *See generally* Time Summary.

Lim's testimony also showed that he was at least reckless regarding Trece's minimum wage and overtime violations. At his deposition, he testified that he delegated wage calculation to other managers, who "follow[ed] the work habits in the restaurant industry . . . Mexican restaurant[s] specifically." Lim Depo. at 29:10–16. However, from there, "the manager gave [him] the paperwork, how much the schedules [sic] and the days they work." *Id.* at 28:3–5. Lim would then sign paychecks and distribute cash payments. Defs' 56.1 at ¶ 49. Thus, even drawing all inferences in Lim's favor at this stage, there is simply no basis to find that he was unaware of the discrepancy between the money actually paid to Guerra and the money that would be owed to her under relevant minimum wage laws.

Thus, all damages arising in connection with Guerra's sub-minimum wage payrates will be subject to equal awards of liquidated damages once the amount can be properly calculated. *See* NYLL § 198(1). Similarly, Guerra will be entitled to liquidated damages for money owed as a result of her unpaid overtime premium for the week of April 29–May 5, 2013. However, because there is a material question of fact as to whether she worked overtime during any other week, the Court cannot yet determine if liquidated damages may be awarded for those weeks.

### ii. Damages Stemming From Guerra's Wage Notice and Wage Statement Claims

#### 1. Wage Notices

Under the version of NYLL § 195(1-a) existing in 2013, when Guerra began working at Trece, the company was required to provide her with a wage notice at the time of hiring. *Gamero*, 272 F. Supp. 3d at 509.[21] At the time, NYLL § 198(1-b) provided for damages of $50 per week, up to $2,500, for each week that Guerra worked without receiving such notice.

---

[21] While it does not impact the damages analysis, the version of the law in effect at the time also required Trece to provide wage notices on or before February 1st for each subsequent year of a party's employment. *Id.* at 510 n.13.

*Cabrera*, 2017 WL 1289349, at *6.  The statutory maximum would therefore be met after an employee worked 50 weeks without receiving a proper wage notice.[22]  Guerra had worked 50 weeks at Trece by April 2014.  *See* Time Summary at 7–11 (showing the weeks Guerra worked between March 2013 and April 2014).  Because she never received a wage notice at any time, Defendants are liable for statutory damages of $2,500 under the earlier version of NYLL § 198(1-b).

On February 27, 2015, amendments to NYLL increased the amount of damages available to employees for violations of § 195(1-a).  *Cabrera*, 2017 WL 1289349, at *6.  Damages were increased to $50 per work day, up to $5,000, for each day that violations of § 195(1-a) "occurred or continued to occur."  § 198(1-b).  Therefore, Guerra is eligible for additional damages under these amendments to § 198(1-b).  At $50 per work day, an employee like Guerra, who had already reached the previous statutory minimum, would have to put in 50 work days on or after February 27, 2015 to receive an additional $2,500 in statutory damages under the amendments.[23]  Guerra's Time Summary shows that she indeed worked well over 50 days after this date.  *See* Time Summary at 14–19 (showing that she typically worked twice per week between March 2015 and December 2016).  Thus, Guerra is entitled to a total of $5,000 in statutory damages for Lim's wage notice violations.

## 2.  Wage Statements

The version of NYLL § 198(1-d) in effect before February 27, 2015 also subjected employers to liability of up to $100 per work week in damages, with a cap of $2,500, for each

---

[22] $50 per work week times 50 weeks is $2,500, the previous statutory maximum.

[23] Guerra is only entitled to an additional $2,500 under the amended statute because she is already entitled to $2,500 under the earlier statute.

week that the employer violated NYLL § 195(3).  *See Gamero*, 272 F. Supp. 3d at 511.  Thus, it would take an employee 25 weeks of work to meet the earlier statutory maximum of $2,500.  As Guerra began working at Trece in March 2013 and worked for over 25 weeks without receiving a wage statement, she is entitled to recover the full $2,500 under the earlier version of NYLL § 198(1-d).  *See* Time Summary at 23–25 (showing Guerra's shifts in 2013).

On February 27, 2015, changes to NYLL for violations of NYLL § 195(3) also went into effect.  *See Gamero*, 272 F. Supp. 3d at 511 n.14; *see also* NYLL § 198(1-d).  Employees may now recover $250 per day, up to $5,000, for each day that wage statement violations occurred or continued to occur.  *See Cabrera*, 2017 WL 1289349, at *6.  Because it is undisputed that Defendants' wage statement violations continued after February 27, 2015, Guerra may recover additional damages at a rate of $250 per work day, up to a total of $5,000, under the amended statute.

At a rate of $250 per work day, Guerra would have needed to work for ten work days after February 27, 2015 to recover an additional $2,500 in statutory damages.[24]   Guerra indeed worked more than ten work days after February 27, 2015.  *See* Time Summary at 14–19 (showing that she typically worked twice weekly between March 2015 and December 2016).  Thus, Guerra is entitled to recover an additional $2,500 for days worked *after* the NYLL was amended, on top of her recovery of $2,500 for days worked under the earlier version of § 198(1-d), for a total of the statutory maximum of $5,000.  The Court therefore awards Guerra a total of $5,000 in wage statement damages under the NYLL.

---

[24] $250 per work day times ten days is $2,500.

IV.   **CONCLUSION**

The Court grants in part and denies in part the parties' cross-motions for summary judgment.  Specifically:

- The court grants Guerra's motion for summary judgment on:

    - Lim's liability as an employer under the FLSA and NYLL;

    - Lim's liability for failure to provide wage notices and wage statements under NYLL;

    - Lim's liability for failure to pay minimum wage under the FLSA and NYLL;

    - Lim's liability for failure to pay overtime premiums for the week of April 29–May 5, 2013; and

    - Lim's inability to claim a tip credit.

- The Court denies Guerra's motion for summary judgment on:

    - Lim's liability for failure to pay Guerra an hourly wage as required by NYLL;

    - Lim's liability for misappropriation of gratuities;

    - Lim's liability for failure to pay Plaintiff spread of hour payments under NYLL;

    - Lim's liability for failure to pay overtime premiums for all weeks except the week of April 29–May 5, 2013; and

    - Defendants' liability for pregnancy discrimination under NYSHRL and NYCHRL;

- The Court grants Defendants' motion for summary judgment on:

    - Dismissal of all claims against Trece due to its bankruptcy discharge; and

    - Dismissal of Guerra's NYSHRL and NYCHRL claims for lack of subject matter jurisdiction.

- The Court denies Defendants' motion for summary judgment as moot on:

o   Dismissal of Guerra's NYSHRL and NYCHRL claims against Lim on the basis that he is not an employer under these statutes.


The Clerk of Court is respectfully directed to terminate docket numbers 42 and 51.

It is SO ORDERED.

Dated:  November 30, 2020

_____

New York, New York
Edgardo Ramos, U.S.D.J.